Lawrence D. SOWERS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 33S00–9807–DP–387.

Supreme Court of Indiana.

March 3, 2000

Kevin P. McGoff, Indianapolis, Indiana, Jessie A. Cook, Terre Haute, Indiana; Attorneys For Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana , Attorneys For Appellee.

BOEHM, Justice.

This case involves the seizure of several items from a tent located in the backyard of a residence. A valid search warrant had been obtained for the residence. Al-

though the tent was an area in which the occupant had an expectation of privacy, we hold that the warrant was valid for a search of the tent to the same degree as for any other structure within the curtilage of a residence. Accordingly, the search did not violate the Fourth Amendment or the Indiana Constitution. We remand this case to the trial court with direction to deny Sowers' motion to suppress.

### Factual and Procedural Background

On June 19, 1998, a neighbor found the bodies of Tony Westfelt and Crystal Neal in Westfelt's apartment. Westfelt had been shot in the forehead and Neal in the back. Police soon obtained information linking Sowers to the killings. Ultimately Sowers was charged with two counts of murder. Because the State filed a request for the death sentence, appeal to this Court is proper.

This is an interlocutory appeal and trial is scheduled to begin in a matter of weeks. We see no reason to provide a detailed recitation of facts that may appear at the trial. It is sufficient for these purposes to state that at a probable cause hearing in the early morning hours of June 21, police presented to the judge sufficient information to justify issuance of a warrant for the search of a residence located at 801 West Neely Street in Muncie, and seizure of "a silver in color revolver handgun, with dark color grips" and other items "believed to be concealed in or about said dwelling." The judge was told that several hours earlier Sowers had been sleeping in a tent behind the residence, and a warrant was also issued for Sowers' arrest.

Shortly before 3:00 a.m., several officers from the Henry County Sheriff's Department, the New Castle Police Department, the Indiana State Police, and the Muncie Police Department executed the warrants. One group of officers entered the front of the home and another group secured its rear. As soon as the officers at the rear heard an entry at the front, they began to search the three tents in the backyard. Sowers was found in the tent nearest to the house and ordered to exit. As Sowers rose, an officer saw a silver revolver near the area where he had been lying. Sowers was arrested and the handgun and other items located in the tent were seized approximately fifteen minutes later.

Sowers filed a motion to suppress all evidence seized from the tent on the ground that the search of the tent was not authorized by the warrant and therefore violated both the Fourth Amendment to the United States Constitution and Article I, § 11 of the Indiana Constitution. After extensive briefing by the parties and a hearing on the matter, the trial court granted the motion to suppress all evidence seized from the tent except the handgun. At Sowers' request, the trial court certified the ruling as to the gun for interlocutory appeal. This Court accepted jurisdiction over the appeal and also granted the State's request to file a cross-appeal challenging the exclusion of the other items.

### I. Fourth Amendment to the United States Constitution

"The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'" *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987) (quoting U.S. Const. amend. 4). The Supreme Court of the United States has explained the purpose of this requirement as the prevention of general or wide-ranging exploratory searches. *See id.* Thus, the lawful scope of a search is "defined by the object of the search and the places in which there is probable cause to believe it may be found." *Id.* at 84, 107 S.Ct. 1013 (quoting *United States v. Ross*, 456 U.S. 798, 824, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)). It is sufficient that a warrant describe the place to be searched in terms that an officer "can with reasonable effort ascertain and identify the place intended."

*Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757 (1925).

The issue is whether the Fourth Amendment permits police officers who secure a lawful warrant for a residence at a specific address to search a tent in the backyard of that dwelling. The trial court held that the search of the tent violated the Fourth Amendment. It correctly observed that an occupant of a tent has a legitimate expectation of privacy protected by the Fourth Amendment. *See Haley v. State,* 696 N.E.2d 98, 101 (Ind.Ct.App. 1998), *trans. denied,* 706 N.E.2d 175 (Ind. 1998) (table). Because the warrant in this case did not specifically mention the tent and the tent and residence were not used as a "collective dwelling," the trial court held that the search of the tent was outside the scope of the warrant. In reaching this conclusion, the trial court relied on this Court's opinion in *Figert v. State,* 686 N.E.2d 827 (Ind.1997), which observed that "[a]s a general proposition, a search of multiple units at a single address must be supported by probable cause to search each unit and is no different from a search of two or more separate houses." *Id.* at 830. The rationale behind *Figert* and similar cases is the requirement that probable cause must exist as to each separate unit of a multi-unit dwelling—typically an apartment building, but in *Figert* a group of mobile homes. *See id.* at 831 ("[T]he better practice is to obtain a separate warrant for each residence or place unless police proceed under a 'collective dwelling' theory, in which case the facts supporting that conclusion should be set forth."); *see also Watts v. State,* 434 N.E.2d 891, 893 (Ind.Ct.App.1982) ("[I]n situations involving buildings, particularly dwellings with multiple occupants, search warrants have generally been held to be invalid when they fail to specify which sub-unit was to be searched."). The same considerations do not apply when police obtain a warrant for a single residence that may have a yard and perhaps also outbuildings such as sheds, or in this case tents.

In *Ross,* the Supreme Court held that "a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found." 456 U.S. at 821, 102 S.Ct. 2157. We agree with the courts that conclude the same reasoning applies to the yard and outbuildings of a single residence. As the Ninth Circuit put it:

We are unable to identify a privacy based reason why this principle should be restricted to the inside of a residence and stop at the residence's threshold to the backyard, or curtilage. If a search warrant specifying only the residence permits the search of 'closets, chests, drawers, and containers' therein where the object searched for might be found, so should it permit the search of similar receptacles located in the outdoor extension of the residence....

*United States v. Gorman,* 104 F.3d 272, 275 (9th Cir.1996). The Ninth Circuit further observed, correctly as far as we can determine, that "[e]very published opinion addressing the issue has concluded that a warrant authorizing the search of a residence automatically authorizes a search of the residence's curtilage." *Id.*

Every value furthered by the Fourth Amendment remains intact if a proper warrant for the search of a single residence also permits a search of the yard or curtilage at the designated address. The proper procedures to invoke judicial supervision have been followed, and a proper justification for the intrusion has been established. The only issue is whether a warrant is overbroad in its geographic scope or intentionally restricted to a house itself. Neither is true here, given the designation of the property to be searched as a "residence" at a single specified address.

Finally, the authorities seem unanimous in permitting similar searches. "Curtilage" originally appears to have meant the area within a fence surrounding a structure, but is now used in this context with-

out regard to whether what is usually termed the "yard" is fenced or not. *See, e.g., United States v. Brown,* 822 F.Supp. 750, 754 (M.D.Ga.1993), *aff'd,* 50 F.3d 1037 (11th Cir.1995) (table) ("The search warrant in this case authorized intrusion into the area of highest expectation of privacy. It seems logical and reasonable that a search warrant that authorizes intrusion on this greater area of privacy would include authorization for intrusion in the lesser area of privacy, the backyard."); *Barton v. State,* 161 Ga.App. 591, 288 S.E.2d 914, 915 (1982) (observing that " '[p]remises' contemplates the entire living area used by occupant" and upholding search of a shed twenty feet behind the house); *State v. Basurto,* 15 Kan.App.2d 264, 807 P.2d 162, 165 (1991), *aff'd,* 249 Kan. 584, 821 P.2d 327 (1991) (upholding search of a shed in the backyard of a residence, observing "[t]here appears to be little doubt that a search warrant which describes only the residence of a defendant will authorize the search of any vehicles or buildings within the 'curtilage' of that residence"); *State v. Vicars,* 207 Neb. 325, 299 N.W.2d 421, 425–26 (1980) (upholding search of calf shed located on the other side of a chain link fence and 100 feet from residence); *State v. Trapper,* 48 N.C.App. 481, 269 S.E.2d 680, 684 (1980) (holding that a warrant for search of house trailer also permitted search of tin shed approximately thirty feet from trailer); *State v. Stewart,* 129 Vt. 175, 274 A.2d 500, 502 (1971) (upholding search of a tree located in the backyard of a residence).

Like the barn, garage, shed, and tree in the cited cases, Sowers' tent was a structure within the curtilage of a dwelling for which the police secured a valid search warrant. As a result, when police obtained a valid warrant to search the residence at 801 West Neely Street, they were also authorized to search the tent in the backyard of the residence. The search of Sowers' tent and the seizure of items found in the tent did not violate the Fourth Amendment under these curtilage cases. We see no reason to disagree with these

authorities and find no defect in a search that was properly authorized. Indeed, a police officer specifically advised the issuing judicial official that Sowers was in a tent in the backyard of the residence.

Finally, because the officer who found Sowers ordered him out of the tent several minutes before a different officer entered the tent to seize the gun and the other items, the parties also discuss the effect of *Middleton v. State,* 714 N.E.2d 1099 (Ind. 1999). That case held that an officer who is lawfully in a home (in that case as a prospective buyer of the house) and sees contraband (in that case marijuana and paraphernalia) does not retain the privilege to seize the contraband under the "plain view" doctrine after he leaves the premises. That doctrine has no applicability when there was no termination of the officer's authorization to be on and to search the premises. The officers in the case at bar were at the residence under a warrant authorizing a search of the entire premises. They never discontinued the search and required no new authority to enter and reenter the tent or any other room of the house or area within the curtilage. Accordingly, *Middleton* has no application here.

## II. Article I, § 11 of the Indiana Constitution

■ Sowers also contends that the search of his tent violates Article I, § 11 of the Indiana Constitution. The purpose of Article I, § 11 is "to protect from unreasonable police activity those areas of life that Hoosiers regard as private." *Brown v. State,* 653 N.E.2d 77, 79 (Ind.1995) (citing *Moran v. State,* 644 N.E.2d 536, 540 (Ind.1994)). As this Court explained in *Brown,* a claimed violation of Article I, § 11 requires a determination of whether the police behavior was reasonable. 653 N.E.2d at 79. Although the existence of a valid warrant is one consideration in this determination, it is not dispositive. *See id.*

For the same reasons explained above, we hold that the search of Sowers' tent

was reasonable. Hours before the search, police obtained credible evidence that Sowers was asleep in a tent behind the residence at 801 West Neely. They secured a warrant to search the residence at that address and to arrest Sowers and seize a handgun and related materials believed to be concealed "in or about" that dwelling. Under these circumstances, the search of a tent behind the residence was eminently reasonable and presented no violation of the Indiana Constitution.

## Conclusion

This case is remanded to the trial court with direction to deny Sowers' motion to suppress.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.